## JOHN ALSOP

*v.*

## MARY L. ECKLES *et al.*

CHANCERY—*securing a grantor in the possession of land until his deed takes effect.* Upon a bill to enjoin the defendant from taking possession of land under a deed executed by direction of the equitable owner of the land, on the ground that it was never delivered, and to set the same aside as a cloud upon complainant's title, and for general relief, if it appears that the deed was delivered to take effect upon the death of the complainant, and that he was to retain possession of the land during his lifetime, the bill should not be dismissed, but the complainant should be protected in the possession of the land during his lifetime, and the defendant enjoined from ousting him or disturbing him in the possession.

Writ of Error to the Circuit Court of Effingham county; the Hon. Hiram B. Decius, Judge, presiding.

Messrs. Thornton & Moulton, for the plaintiff in error.

Mr. S. F. Gilmore, and Mr. A. J. Gallagher, for the defendants in error.

Mr. Justice Breese delivered the opinion of the Court :

The plaintiff in error, John Alsop, prior to 1871, to subserve purposes of his own, had placed the legal title to a tract of land which he had purchased and paid for, in his son, William Alsop. John Alsop built a house on the land, and lived on it. On the 28th of October, 1871, he caused William Alsop to make a deed for the land to his married daughter, Mary Eckles, who, with her husband, George Eckles, was at the time living in the same house on this land with complainant. Complainant was then sick, and did not expect to recover, and he alleges in his bill of complaint that, desiring to arrange his worldly affairs, he caused his son William to make a deed to his daughter, Mary Eckles; that he informed Mary that he should retain possession of the deed and premises so long as he lived, and use and control the same. He alleges he never delivered the deed to Mary, and that William Alsop never delivered it to her. According to complainant's version of the transaction, the deed, after being executed by William Alsop to Mary Eckles, was placed by William in complainant's possession, who placed the deed with another deed in a leathern wallet, and then handed the wallet, with the deed therein, to Mary Eckles, directing her to place the same in complainant's private drawer in his bureau; that she did as directed, locked the drawer and handed the key to complainant. The deed had not been recorded. No money consideration was paid by Mary Eckles. Before the execution of the deed, George Eckles paid complainant rent for the premises, and it is alleged since its execution George and Mary recognized complainant as their landlord.

The prayer of the bill was for an injunction to restrain defendants from taking possession of the premises; that this deed be canceled as a cloud upon complainant's title, and for general relief.

There were answers put in, and testimony heard, and a decree passed dismissing the bill. The complainant prosecutes this writ of error.

The only question in the case is, was there a delivery of this deed, so executed by William Alsop to Mary Eckles, as to vest in her the legal title to the land?

On the second of December, 1872, Mary Eckles died, leaving an infant daughter, who, with her guardian, is made defendant to the bill, together with George Eckles and one Kreigh, claiming to be tenant in possession of the land.

The scope of the bill is, to vest the legal title in complainant, so as to prevent the same passing to George Eckles, which it would do on the death of the child, he surviving.

The testimony in regard to the delivery is somewhat confused and conflicting. It seems William Alsop held the legal title for his father, to other lands beside the tract in question, and when his father was sick, he requested William to make deeds to his children, Mary Eckles and a daughter, Sarah Tennery. This was done, and the father put them in his pocket-book, saying, "Mary, put these deeds away, in the bureau. If I die, they secure the land to you and Sarah. If I live. they are mine, to do with as I am a mind to." This is William Alsop's version of the transaction.

The complainant testified that he had offered to make a warranty deed to the child, at complainant's death, if Eckles would make a quit-claim deed to convey all his supposed interest in the premises; that he did not want to turn his back on the child—the land belonged to its mother. It was in a proposition he made for a settlement; that, in case the child died, the land was to revert to complainant's heirs. He said, once, while in the house, that the bond Eckles proposed to give him would be of no account; that the land belonged to the child, and it could come on the land for the rent, and there

would be trouble in the family. He also testified that the deeds were never out of his possession. The deeds, after Mary Eckles' death, were found in the bureau drawer.

The testimony of Thomas Alsop, Samuel Alsop and Catharine Alsop, children of complainant, and interested in having the title decreed out of the infant child of their sister, gives color to the idea that plaintiff in error wishes to establish, except, perhaps, the testimony of Samuel Alsop. He relates conversations had with Mary Eckles after the deed was made, and at a time when complainant was desirous of making a will, and did make one, devising the land as he had, through William, conveyed it, to Mary Eckles and Sarah Tennery.

Catharine Alsop says, in August, after the deeds were made, she heard her father say to Mary he was going to make his will, and she said, if he did not fix it as she wanted it, she didn't want it at all; heard her father ask Mary if she was willing to make him a deed for the place; she replied she was. The squire said the deed must be made from Mary to her father.

The testimony of the justice of the peace who was present when the deeds were prepared, and who took the acknowledgment, is so clear and natural, that we are inclined to place great reliance upon it. He says he went to complainant's about 11 or 12 o'clock at night, to take acknowledgment of deeds, and took two blanks; that Alsop wanted to fix up his business; wanted a deed made to Mary and her heirs, of 85 acres of land, and one to Sarah Tennery and her heirs, of 40 acres, saying he would make up the balance to her in money. The land was in William's name. William went with witness into the kitchen, where he wrote a few words, and William wrote. When the deed was made, it was taken to the old gentleman. William sat on the bed where his father was lying, and read it to him, who said it was all right. William then signed it, and then another deed was made to Sarah Tennery; acknowledgment to both taken. The magistrate then asked what should be done with the deeds. William said, give them to Mary, which was done by handing them to

her across the table. She took them and laid them down on the table. He was then told to take Mary's note, at five years, for two hundred dollars, but that was waived. Mary paid one dollar, which she got out of the leathern wallet in which the deeds were placed after they were executed. He further said, William picked up the deeds and asked his father what he should do with them, who replied, give them to Mary. She took the deeds, but witness did not know where she put them. Her father said he reserved the right to hold possession of the place during his lifetime. To this, Mary replied, she wanted it no other way, and would have it no other way.

There is much other testimony on the part of the defendants, going to show the land was Mary's, by admissions and repeated declarations to that effect, by plaintiff in error. But the testimony on neither side is very clear or satisfactory, but enough is shown to satisfy us, if there was not an absolute delivery of this deed to Mary, there is enough shown that it was either absolute or to take effect on the death of complainant.

Conceding the latter conclusion to be the correct one, then complainant should be protected in the peaceable possession of the land during his lifetime. This is the extent of his rightful claim.

The court, therefore, erred in dismissing the bill, for, under the prayer of general relief, which is consonant to the scope of the bill, such possession should have been decreed to him, and the defendants enjoined from ousting him or disturbing him in the possession.

The decree is reversed, and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed.*

Mr. JUSTICE SCHOLFIELD, having been of counsel in the controversy involved in this case, prior to his election, took no part in the decision.